**Mrs. Patty Ann GOODNIGHT et al.,**
**Appellants,**

**v.**

**Dr. John R. PHILLIPS, Appellee.**

**No. 15623.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 30, 1970.

Rehearing Denied Oct. 8, 1970.

**198**

John H. Holloway, Houston, for appellants.

Murfee & Hoover, Sweeney J. Doehring, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, W. N. Arnold, Jr., Wm. H. Payne, Houston, for appellee.

PEDEN, Justice.

Appeal by the heirs of Chester Goodnight, deceased, from a take-nothing judgment in a suit against the appellee, Dr. Phillips, alleging medical malpractice and breach of contract in connection with an operation he performed in 1960 to repair Mr. Goodnight's inguinal hernia. The patient has since died of causes not claimed to have been connected with the operation. The plaintiffs alleged in their petition that the doctor's negligence resulted in permanent injury to the decedent's left thigh and left testicle, that the patient's informed consent to the surgery was not given and that the doctor guaranteed that the operation would be completely successful, but it was not. We affirm the judgment of the trial court.

This case was the subject of a prior appeal. The opinion may be found at 418 S. W.2d 862.

In the trial upon which this appeal is based, the jury's findings made in response to special issues were: 1) the jury did not find that in the course of the hernia operation the defendant failed to provide sufficient opening through the inguinal ring so as to permit normal circulation of blood to the plaintiff's left testicle, 4) the jury did not find that the doctor made an oral agreement with the plaintiff that the hernia operation would be performed without injury to other parts of the plaintiff's body, 7) it did not find that the loss of blood supply, if any, to the plaintiff's left testicle was proximately caused by the accident of June 6, 1960, 8) the jury found that the loss of blood supply, if any, to the plaintiff's left testicle was proximately caused by post-operative swelling of the cord, 9) it found no damages to the patient as a direct and proximate result of the damage, if any, to his left testicle directly and proximately caused by the doctor's negligence, if any, 10) it did not find that the operation into the plaintiff's left thigh to obtain fascia lata was without his consent, and 12) it found no damages to the plaintiff based on physical pain and/or mental anguish as a direct and proximate result of the damage, if any, to his left leg directly and proximately caused by the doctor's negligence, if any. It was not necessary for the jury to answer issues numbered 2), 3), 5), 6) and 11), because they were predicated on affirmative findings (which the jury did not make) to other issues.

None of the jury findings was favorable to the appellants. Reference is made to the earlier opinion for a summary of Mr. Goodnight's testimony. His death occurred after the first trial and before the second. His testimony in this second trial was read from the record made in the first one. The appellants in this case called on no doctor other than the appellee to testify as to the medical standards of a reasonable medical practitioner concerning either treatment of the patient or his consent.

Dr. Phillips testified that he agreed in June, 1960, to perform the hernia repair operation on Mr. Goodnight but did not guarantee that it would be successful. He decided that the best suture material for part of this operation would be fascia lata, which he obtained from the patient's left thigh, and he said he informed the patient of his plan to do this but did not tell him

all the possible complications which might result from the two surgical procedures because it was not accepted medical practice to do so in the Houston area in 1960.

It is uncontroverted that after the surgery the patient's left testicle grew smaller and rose higher than the right one. Dr. Phillips' testimony furnishes the only explanation of these changes: they were due to a decrease in the blood supply to the left testicle resulting from swelling of the tissues before or after the operation. He denied that any operating procedures caused the swelling and loss of blood supply, but said he noticed swelling at the time of and after the operation. He related that the opening he provided was adequate by doctors' tests.

The appellants' first point of error is that the trial court erred in overruling the appellants' objections to Special Issue No. 7. The objections preserved in appellants' amended motion for new trial were a) the issue was evidentiary, b) no sole proximate cause issue was raised by the evidence or submitted and c) the issue constituted a comment on the weight of the evidence because it assumed the testicle was damaged by the accident of June 6, 1960, a controverted fact issue.

■ The issue was a defensive one and was answered in favor of appellants. "When an incorrect issue is answered in favor of the complainant, the error will be ignored in the absence of an affirmative showing of prejudice. Submission of evidentiary issues is usually, though not always, considered harmless." 3 McDonald, Texas Civil Practice 1168–9, § 12.37. We do not agree with the appellants that the issue assumes that the testicle was damaged by the accident, and we conclude that submission of the issue did not constitute reversible error.

Appellants' second point of error is that the trial court erred in overruling these objections to Issue No. 8: a) no evidence

of probative force that the loss of blood supply was proximately caused by post-operative swelling, or at least no evidence to show sole proximate cause as a defensive submission, b) the issue was not submittable since the law of the case as established by the Court of Appeals held the fact issue involved to be determined by Issue No. 1, and that Issue No. 8 would be an evidentiary issue and a negative submission of the same fact involved in Issue No. 1, therefore, the law of the case prevented submission of Issue No. 8, and its submission was prejudicial as evidenced by the finding of the jury under Issues 8 and 1, c) the issue as submitted commented on weight and sufficiency of the evidence and by failing to insert 'if any' after the words 'post-operative swelling', informed the jury that the Court's opinion was that there was post-operative swelling, so as to assume such fact, to the prejudice of plaintiff, d) that the placing of the words 'if any' after 'blood supply' further prejudiced and commented, in that the evidence was undisputed that the damage was due to a loss of blood supply, e) that there was no evidence of probative force supported by competent medical authority directed to the facts of this case which indicated that the loss of blood supply was due to "post-operative swelling of the cord."

We hold that the submission of Issue No. 8 did not cause the rendition of an improper judgment in the case. The jury did not find any primary negligence. It is uncontroverted that there was post-operative swelling, and Dr. Phillips testified that in his opinion the loss of blood supply caused the problem to the patient's testicle. He also testified that this swelling interfered with the blood circulation in the cord and testicle. The issue did not contain any comment on the weight of the evidence, and its submission was harmless.

■ As to the appellants' third point, we find no error in the trial court's having declined to permit the appellants' counsel to examine records of the Harris County

Medical Society made six years and more after the occurrences made the basis of this suit and to make a bill of exception from them. The appellants' efforts to show that such records contain reprimands and an agreement on appellee's part to retire on December 1, 1967 amount to an inquiry into irrelevant matters and an attempt to impeach the appellee on a collateral matter. As such they would be inadmissible. 1 McCormick & Ray, Texas Law of Evidence 526, § 684.

Appellants next complain of the trial court's having admitted in evidence the written consent form signed by Mr. Goodnight. We overrule the point. The nature of the patient's consent was a contested issue in the trial, and the form is clearly some evidence of what he consented to. The fact that its provisions were not entirely consistent with the doctor's testimony about his conversations with the patient does not make the form inadmissible. The form stated:

St. Joseph's Hospital
1910 Crawford Street
Houston 2, Texas

AUTHORIZATION FOR SURGEON TO OPERATE

~~A.M.~~
Date ___6-19___ 19 _60_ Time ___3:10___ P.M.

"I,___Chester G. Goodnight___, hereby consent to the surgical procedure
(Name of Patient)

known as _____Hernia Repair_____
(State nature of operation or procedure, as: 'an operation
to remove Appendix')

"I certify that the reasons why it is considered necessary, its advantages and possible complications, as well as possible alternative modes of treatment have been explained to me by_____J. R. Phillips_____,
(Name of Physician or Surgeon)

and in light of this information the undersigned authorizes _____

_____
(Name of Surgeon)

to perform, under any anesthetic deemed advisable, the operation stated above and also to perform such additional procedures as may be held to be therapeutically necessary on the basis of findings in the course of the operation. I also authorize that any tissues surgically removed may be disposed of by the surgeon or the hospital in accordance with their accustomed practice.

"WITNESS: __/s/ L. Aldernia__    Signed __X)    C. G. Goodnight__
(Patient or Nearest Relative

"WITNESS:_____    _____
(Relationship)

"Authorization must be signed by the patient, or by the nearest relative in the case of a minor; or when patient is physically or mentally incompetent.

"Revised: May 2, 1960"

The appellants complain about the sufficiency of the evidence to support negative findings to a number of issues. Those answers merely mean, in law, that the appellants (plaintiffs) failed to discharge their burden of proving the issues in question.

■ Points of error 5 and 6 assert that there is no evidence to support the jury's answer to Issue No. 1 and that the answer is so against the great weight of the evidence as to be clearly wrong. The appellee testified that the opening he provided was adequate so far as any medical doctor could tell. The appellants' position is that Dr. Phillips made a judicial admission that the cause of the atrophy in this case was the diminution in the blood supply to the testicle caused by too tight a closure rather than pressure on the issues caused by continued swelling. We disagree with this view of appellee's testimony. He did not testify that the "cause of the atrophy *in this case*" etc.; he testified that the cause of the atrophy would probably be too tight a closure if a patient had no swelling immediately before the operation but had an abnormally swollen testicle 24 to 48 hours after surgery.

■ We also overrule the appellants' seventh and eighth points of error, which are "no evidence" and "great weight" points as to the jury's negative answer to Special Issue No. 4. The doctor's testimony supports the finding. He testified that he advised the patient that he would also operate on his thigh to get the fascia lata and that in his judgment the fascia lata procedure was the best one to use in this case because it is permanent and is the strongest. In view of the nature of the patient's work as a store manager and his previous hernia surgery it appeared strength was needed to bolster the structures and lessen the chance of recurrence.

■ Points 9 and 10 raise "no evidence" and "great weight" points as to the affirmative finding to Issue No. 8. The finding was supported by the doctor's testimony. Further the jury's negative answer to Issue No. 1 prevented the plaintiffs from recovering on the theory that the doctor negligently made the ring opening too small, so this finding on a defensive inquiry into the cause of the atrophy was of no consequence.

■ Point 11 complains of the finding of "none" to Issue No. 9. The issue was worded so as to inquire only as to the damages proximately caused to the patient's left testicle by the negligence of the doctor. The jury's finding of no primary negligence was supported by the evidence, so it follows that the evidence supports the jury's answer to Issue No. 9.

Appellants' next points claim there is no evidence to support the negative finding to Issue No. 10 and that such finding is against the great weight of the evidence. The doctor's testimony, already noticed, supports the finding.

The appellants' last three points of error complain that the trial court erred in refusing their requested Special Issues A, B, I, E, F, G and H. Requested Issues A and B were:

### A.

Do you find from a preponderance of the evidence that the defendant, Dr. John R. Phillips, had the informed consent of the plaintiff, Chester Goodnight, to operate into plaintiff's left thigh to obtain suture materials for the hernia repair? Answer "We do" or "We do not."

### B.

Do you find from a preponderance of the evidence that such failure, if any, to have plaintiff's informed consent, if any, was a proximate cause of damages sustained by plaintiff? Answer "We do" or "We do not."

The appellants assert that such issues were raised by the pleadings and evidence. The appellants recognize that the trial court submitted Issue No. 10 inquiring

whether the operation in the left thigh was without his consent.

The trial court did not err in refusing requested issues A and B. The burden of proof as to informed consent is on the plaintiff. Wilson v. Scott, 412 S. W.2d 299, 302 (Tex.Sup.1967). Issue A incorrectly placed the burden of proof on the defendant. The tender of an issue which misplaces the burden of proof is not tender of an issue in substantially correct language, and the refusal to give such issue is not reversible error. Rule 279, Texas Rules of Civil Procedure; 3 McDonald, Texas Civil Practice 1152, Sec. 12.33; Castilleja v. Camero, 402 S.W.2d 265 (Tex. Civ.App.1966, affirmed, 414 S.W.2d 424) and cases cited in that opinion.

We also consider the issue to have been properly refused because it was global.

In the absence of a finding that the doctor failed to obtain (or have) the patient's informed consent, the trial court did not err in refusing to submit the accompanying proximate cause issue, Issue B, which necessarily related to the absent finding.

Requested Issue No. 1 was:

Do you find from a preponderance of the evidence that the damage to the plaintiff's left testicle resulted from rough handling, if any, of the cord structures during the surgical procedure? Answer "We do" or "We do not." The transcript reflects that there was written beneath such requested issue the following:

"J defendant failed to handle the spermatic cord gently during the operational procedure?"

We find no indication in the transcript that a proximate cause issue related to I or J was requested or that the trial judge refused to submit one. However, the appellee does not challenge appellants' statement that one was submitted, so we accept it.

We are unable to find any evidence of rough handling of the cord or its structures, so we hold that it was not error to refuse the issues. As a party, Dr. Phillips was an interested witness, but his denial of any rough handling does not alone discharge the appellants' burden of proving that there was any rough handling. Nor was a fact issue raised by the defendant doctor's testimony that damage found to exist may have occurred by reason of more than one cause; the jury could do no more than speculate as to which was, in fact, the efficient cause, so the submission of such choice to a jury would be improper. Bowles v. Bourdon, 219 S.W.2d 779 (Tex. Sup.1949); Hart v. Van Zandt, 399 S.W. 2d 791 (Tex.Sup.1965).

Appellants' last point of error states that the trial court erred in refusing the plaintiffs' requested Issues E to H, relating to gross negligence. The transcript shows that such issues asked whether (E) the defendant acted with malice in cutting into the plaintiff's left thigh to obtain suture materials to repair the hernias, (F) Dr. Phillips' operation into plaintiff's left thigh to obtain suture materials was gross negligence, (G) such gross negligence, if any, was a proximate cause of any damage to the plaintiff and asked (H) what sum of money, if any, should be allowed as exemplary damages. A definition of gross negligence accompanied Issue F and an instruction concerning the awarding of exemplary damages was requested with Issue H. Malice was not defined.

We hold that the evidence does not raise the issues. There is no evidence to suggest that Dr. Phillips acted maliciously. Appellants argue that the issues of malice and gross negligence were raised by Dr. Phillips' testimony that the sole reason for the fascia lata procedure was to obtain sutures but that the customary and accepted suture material used by reasonable and prudent medical doctors in the exercise of ordinary care was either silk or cotton. We do not agree with this appraisal of his testimony.

We have already noticed some of Dr. Phillips' testimony concerning his choice of fascia lata for suture material in this operation. He was the only witness who testified as to the use of suture materials by doctors in this case. He said that different materials were used for different parts of the operation and that he didn't think there was any accepted standard medical suture used in this area in 1960. He used fascia lata in this case because it was his opinion that it was best for his patient to protect him against further trouble or the dread of recurrent hernia. In his experience it gives the best result. He further testified:

"Q * * * Is it not a fact, Doctor, that in 1960 that the accepted and customary suture material in the repair of both direct and indirect hernia in Houston, Harris County, Texas, by the medical doctors here was silk, a non-absorbable material?

"A That was one of the sutures. There were other sutures.

"Q Then the second one was what? What is the next most prominently used as a customary and accepted suture material in this county at that time?

"A Probably cotton."

This testimony does not raise a fact issue of ordinary negligence, much less one of gross negligence or malice. If the plaintiff was to show that the doctor committed ordinary negligence he had the burden of establishing that his use of the suture material departed from the standard that would have been used by a reasonable medical practitioner of the same school of practice and the same or similar community *under the same or similar circumstances,* Bowles v. Bourdon, supra., i. e., where the patient had had a previous hernia operation and was engaged in an occupation that required him to do lifting. The doctor testified that under these circumstances the strongest type of repair work is needed.

The appellants also say that the gross negligence and malice issues were raised by statements of other doctors. The only indication in the record that some doctors regard the use of fascia lata for sutures in a different light than does Dr. Phillips is contained in some questions asked by plaintiffs' counsel of the doctor, wherein counsel read from a medical book. Dr. Phillips testified that he did not agree that the material read was an authoritative medical statement.

 Even if the defendant had recognized the work as a standard authority on the subject, which he did not, the excerpt read would not constitute original evidence, but might be read solely to discredit his testimony or to test its weight, and could not be taken as sustaining the issues in the case. Bowles v. Bourdon, supra; 32 C.J.S. Evidence § 718, p. 1023.

The judgment of the trial court is affirmed.