Mildred E. BURCHFIELD, Appellant,

v.

Marten GEITZ, M.D., Appellee.

No. 6372.

Court of Civil Appeals of Texas, El Paso.

Oct. 23, 1974.

Warren Burnett Associated, Richard J. Clarkson, Wm. Ruff Ahders, Odessa, Flahive & Ogden, R. M. Ogden, Austin, for appellant.

Shafer, Gilliland, Davis, Bunton & McCollum, Inc., W. O. Shafer, James M. O'Leary, Odessa, for appellee.

## OPINION

WARD, Justice.

This is a medical malpractice case. The patient, Mrs. Mildred Burchfield, complained of the treatment she received following an operation on her back. It was the plaintiff's contention that the doctor negligently permitted an infection to occur postoperatively which caused her additional operations, expenses and suffering. Trial was to a jury and upon the conclusion of the plaintiff's evidence the trial Court instructed a verdict in favor of the doctor. The appeal pertains to the existence or not of legally sufficient evidence concerning negligence and causation. We affirm.

A serious infection developed in the area of the plaintiff's operation. She alleged this was caused by the negligence of the defendant in leaving excess pieces of suturing material in her back, in ordering the plaintiff to be placed in a Hubbard tank, and in failing to employ the use of a circolectric bed. The operation was for a herniated disc and was performed by the defendant, Dr. Marten Geitz, on August 11, 1969, at the hospital in Odessa. During the operation a problem with excessive bleeding occurred. Following the opera-

tion, which was down to the spine, he closed the wound by using black silk sutures on the second and third layers of the body and by using steri-strips on the epidermis. On August 20th, the plaintiff developed a drainage from the incision and the defendant ordered that she be placed in a Hubbard tank on either August 20th or 21st. A Hubbard tank contains non-sterile warm circulating or whirling water and a person's whole body can be immersed in it. It was established that the wound contained a staphylococcic infection before she was placed in the Hubbard tank. The plaintiff remained in the hospital until September 20, 1969, at which time the incision appeared to be healed and she was released. On November 14th, the plaintiff returned to the doctor's office and it was discovered that the drainage had started again. She was readmitted to the hospital on November 17th and she was again started on the Hubbard tank treatment. On November 25th, Dr. Geitz performed a second operation whereby he attempted to remove the infection from the old incision. At this time, he removed the old silk sutures at the second layer because he felt that they were causing or maintaining the infection. He did not go to the third layer of the body because it did not appear to be infected and the flesh appeared healthy. After the second operation, the plaintiff was again placed in the Hubbard tank and while the incision was still open. After she was released from the hospital the second time, the plaintiff continued to have drainage around the area of the incision. She continued to visit Dr. Geitz who treated her, and on some of these visits he again put her in the whirlpool bath. In March of 1970, and after she had become dissatisfied with her treatment, she went to Houston where she contacted Dr. John Bunting and Dr. Bruce Cameron who placed her in St. Luke's Hospital. On March 4th, she was again operated on for the infection. During the course of this operation, the wound was opened to the bone and the infection was found to be centered around two black sutures which

were removed from the third layer of the person. Following this surgery, the infection terminated, the plaintiff's back healed normally, and she was discharged from the Houston hospital the latter part of March, 1970.

The defendant's motion for the instructed verdict contains numerous grounds, and the trial Court by its judgment did not indicate upon which of the grounds it based its judgment. The plaintiff complains of the action of the Court in instructing the verdict for the defendant by a general point of error and to avoid the possibility of any waiver the plaintiff has carefully briefed each of the grounds of any importance contained in the defendant's motion on which the trial Court acted. From the defendant's brief, the defendant relies only on the grounds of "no evidence" in the case as to any negligence or proximate cause. As to the other grounds contained in the motion for an instructed verdict, and not discussed by the defendant, we are in agreement with the position now urged by the plaintiff and without further discussion of those matters we turn to the questions of negligence and proximate cause.

■■■ In determining the propriety of the instructed verdict, we are required to review the evidence in the light most favorable to the losing party. Any inference which properly may be drawn from the evidence must be indulged against the granting of the motion and if the record reflects any testimony of probative force, either direct or circumstantial, in favor of the plaintiff on the two vital issues, then we must hold the instruction was not proper. The "no evidence" rule applies. Hart v. Van Zandt, 399 S.W.2d 791 (Tex.1965); McRoy v. Riverlake Country Club, Inc., 426 S.W.2d 299 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.).

With these principles in mind, a statement of the evidence in more detail becomes necessary. Dr. Bruce Cameron, the orthopedic surgeon in Houston, was called as a witness by the plaintiff and he testi-

fied that he did not find excessive suturing. The original wound had to be closed by suturing or the patient would have bled to death, due to the bleeding encountered at the time of the operation. As to the second operation, the practice of packing the wound open and letting it drain until it is clean is a well-accepted and known procedure. It was not a lack of experience that caused the infection. The treatment that had been afforded the plaintiff by Dr. Geitz was described by Dr. Cameron as an accepted treatment and as a "very hopeful type" although it was not a type of treatment that Dr. Cameron would agree with. As to her being handled improperly, the most he would say was that the handling was not successful. There was no breach of medical standards. In his opinion, the cause of the infection was that she was allergic to silk sutures, a rare and uncommon reaction. There is nothing wrong medically with using silk sutures. Good medical doctors use them, and there would have been no way for Dr. Geitz to have known of this allergic reaction prior to the operation. He found no excessive suturing and nothing wrong with the original operation.

As to her being placed in a Hubbard tank, this was done for a patient who was already draining pus from her wound. Dr. Cameron stated it is an accepted treatment and there is no violation of any medical standard in the use of that treatment, but he did not like it and did not agree with it.

As to the care of the infection, the treatment performed by Dr. Geitz was basically the same as would be used in Houston, except in Houston they went further and expanded the principles involved. In other words, Dr. Cameron went further than Dr. Geitz and went to the bone and cleaned out the entire area with both circulation and suction. A mechanism was then installed which constantly irrigated and flushed in and flushed out antibiotic solutions. The patient was placed in a circolectric bed which allowed the patient to be tilted into all positions to promote the circulation and flushing.

Dr. John Bunting, also called by the plaintiff, is an internalist and diagnostician, and he examined the plaintiff when she first went to Houston and then referred her to Dr. Cameron for the corrective surgery and treatment. He testified repeatedly that he would never put a patient with an open wound draining pus into a tank, "one is just asking for trouble." Due to the fact that the Hubbard tank was non-sterile, he stated that it was an improper medical procedure to put a patient with an open wound into the tank and that an infection would be caused to the patient.

From the hospital records of the Odessa hospital, introduced by the plaintiff, it was established that when the plaintiff was first placed in the tank she already had the infection in question.

■ It is apparent that there was no attempt made by the plaintiff to produce any evidence to support her allegations as to negligence in failing to use a circolectric bed. As to leaving the suturing material in the back, the plaintiff is in no better a position. While Dr. Cameron testified that he preferred not to use black silk, it was simply a matter of choice by the particular physician and the patient was unexpectedly allergic to the material. The fact that the subsequent operation by another doctor cleared up the condition or cured the plaintiff is not evidence of negligence or proximate cause. That standing alone is no more than a mere surmise, suspicion or speculation that there was improper treatment. Kinion v. Hyde, 471 S.W.2d 920 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.).

■ It is obvious that the main attack made by the plaintiff on the action of the trial Court was that the evidence was legally sufficient to establish that the infection in the plaintiff's back was from her being immersed in the Hubbard tank. Here, in spite of the testimony of Dr. John Bunting that it was improper medical procedure to put a patient with an open

wound into the tank, and that an infection would be caused to the patient, the fact remains that she already had the infection. The burden of proof is on the plaintiff to show that the injury was negligently caused and it is not enough to show that the injury might have occurred from the doctor's negligence and from other causes not the fault of the doctor. "Such evidence has no tendency to show that negligence did cause the injury." Hart v. Van Zandt, supra, 399 S.W.2d at 792. As to proximate cause, that case further states that "proof of causation must be beyond a showing of a possibility that the injuries arose from the defendant's negligence or lack of skill, since the jury will not be permitted to speculate as to the cause of the injury. Thus where the evidence most favorably to the plaintiff develops more than one equally probable cause, for one or more of which defendant is not responsible, the plaintiff has failed to sustain his burden of proof." In summing up infection cases where the infection was contracted following surgery, it is stated that the plaintiff faces formidable difficulties. The same principles of evidence apply to infection cases as to other medical malpractice cases, but the necessity of showing the source of an infection makes proof of proximate cause particularly difficult in these cases. "What is an infection and from whence did it come are matters determinable only by medical experts." Kaster v. Woodson, 123 S.W.2d 981 (Tex.Civ.App.—Austin 1938, writ ref'd). This is a scientific field where conclusions must be guided by the opinions of experts. In other cases in which expert testimony has been presented, the plaintiff's cause has been defeated by statements that infection could have occurred regardless of the defendant's treatment. See Hart v. Fielden, 295 S.W.2d 911 (Tex.Civ.App.—Texarkana 1956, writ ref'd n. r. e.); Kootsey v. Lewis, 126 S.W.2d 512 (Tex.Civ.App.—San Antonio 1939, no writ); Brown v. Shannon West Texas Memorial Hospital, 222 S.W.2d 248 (Tex.Civ.App.—Austin 1949, writ ref'd n. r. e.); 11 Hous.L.Rev. 325.

"The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by this court and by other courts." Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 785 (1949). If it can be determined from Dr. Bunting's testimony that the infection found to have existed may have come about from the immersion in the Hubbard tank where undoubtedly the infection was also found to have existed prior to the immersion, then we have a situation where the jury could do no more than speculate as to which was in effect, the efficient cause, and the submission of such a choice to the jury would be improper. Goodnight v. Phillips, 458 S.W.2d 196, 202 (Tex.Civ.App.—Houston (1st Dist.) 1970, writ ref'd n. r. e.).

By her final points, the plaintiff complains of the action of the trial Court in refusing to permit the introduction into evidence of a letter from Dr. George Ehni to Dr. Cameron, a letter written by Dr. Bunting, together with a series of hypothetical questions, with the answers, asked Dr. Bunting. The matters inquired about are contained in four purported bills of exception in a supplemental transcript which was not filed in this Court. This was received by the Clerk of this Court approximately 174 days after judgment was entered, 99 days after the transcript was filed, and some 75 days after the statement of facts was filed. The purported bills of exceptions were never presented to nor signed by the trial Judge. Under the provisions of Rule 372, Texas Rules of Civil Procedure, a bill of exception not approved by the trial Court and not a bystander's bill will be disregarded on appeal. State Bar of Texas, Appellate Procedure in Texas, § 9.-

4. Also under the provisions of Rules 381 and 386, Tex.R.Civ.P., bills of exception must have been filed in the Appellate Court within the time permitted for filing the transcript and statement of facts. For the reasons stated, the bills are not properly a part of the record on this appeal and present nothing for review.

The Appellant's points of error have all been considered and are overruled. The judgment of the trial Court is affirmed.