Paul GUIDRY, Appellant,

v.

Dr. John R. PHILLIPS, Appellee.

No. B 1875.

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 28, 1979.

Rehearings Denied April 18, 1979.

884

John H. Holloway, Houston, for appellant.

Charles R. Parker, Fulbright & Jaworski, Houston, for appellee.

Before J. CURTISS BROWN, C. J., and COULSON and CIRE, JJ.

COULSON, Justice.

Paul Guidry, appellant, sued appellee Dr. John R. Phillips alleging malpractice, negligence, fraud, and breach of warranty in the performance of alleged unnecessary surgery to remove appellant's carotid body from his neck in an effort to cure his asthma.[1] Appellant also sued the Harris County Medical Society for alleged fraud, misrepresentation and negligence in informing appellant's mother, upon inquiry, that Dr. Phillips was in very good standing with the Medical Society and that no complaints had ever been filed against him, although it is alleged that many such complaints had in fact been filed with the Society. Further allegations against the Medical Society complained of negligence in maintaining Dr. Phillips as a member in good standing and in not acting to inform the hospital where Dr. Phillips practiced of the complaints against him so that the hospital could act to curtail his surgical privileges. On motion by Dr. Phillips the trial court severed the cause of action against the Harris County Medical Society. Trial of appellant's cause of action against Dr. Phillips was had to a jury and resulted in a judgment that plaintiff take nothing. Appellant appeals from that judgment. We reverse and remand the cause for a new trial.

Appellant's first four points of error are addressed to the exclusion of testimony given by Dr. Thomas L. Petty, offered in the form of answers to a deposition taken by written interrogatories. Point of error number one urges that the trial court erred in sustaining appellee's objections to a lengthy hypothetical question posed to Dr. Petty. This question set forth in detail the facts of appellant's case in hypothetical form and elicited the doctor's expert opinion on whether the operation was consistent with good medical practice. Appellee objected to this testimony on the basis that the deposition was obtained in 1972 and that Dr. Petty was not qualified to testify as to the standard of care for a similar

patient in 1963, the date the operation on appellant was performed. We do not agree.

The burden of proof is on the patient-plaintiff to establish that the physician-defendant has undertaken a mode or form of treatment which a reasonable and prudent member of the medical profession would not have undertaken under the same or similar circumstances. The circumstances to be considered include, but are not limited to, the expertise of and means available to the physician-defendant, the health of the patient, and the state of medical knowledge.

*Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex. 1977). The state of medical knowledge at the time of the treatment alleged to have been improper is a particularly important circumstance in a case like the one before us, which involves a mode of treatment which has always been controversial, but at the time rendered may have been in favor with more members of the medical profession than later proved to be the case. Therefore it is incumbent upon the plaintiff in such case to demonstrate that his expert medical witness is qualified to testify as to the state of medical knowledge at the time of the treatment complained of and to limit his opinion testimony to the standard of care in effect at that time. As to the first of these burdens the evidence of Dr. Petty's qualifications and experience showed that he graduated from the University of Colorado Medical School in 1958 with an M.D. degree, spent the next year in an internship training and then had one year of medical specialty residency at the University of Michigan. This was followed by two more years of medicine specialty training at the University of Colorado, ending in 1962. In 1963 he had a fellowship training in the subspecialty of pulmonary disease which made him Board qualified in pulmonary disease. Thus, during the period in question, 1963, Dr. Petty was a licensed physician pursuing intensive studies in the area of pulmonary diseases. We believe that

1. For an explanation of carotid body surgery see *Hood v. Phillips*, 554 S.W.2d 160 (Tex. 1977), especially footnote 2, at 162.

this is sufficient to qualify Dr. Petty to testify as to the standard of care for treatment of asthma in 1963. *Jeffcoat v. Phillips*, 534 S.W.2d 168, 174 (Tex.Civ.App.— Houston [14th Dist.] 1976, writ ref'd n. r. e.).

Appellee also argued that appellant's questions did not limit Dr. Petty's testimony to the standard of care in 1963. It is true that Dr. Petty's deposition was not taken until 1972. However the hypothetical question here, which covers some four pages of single-spaced type in the statement of facts and explains in detail the facts of appellant's case, limits the facts to the dates actually covered. Several times within the lengthy hypothetical the witness is asked to assume the fact that all of the events occurred in 1963. We believe this is sufficient to limit Dr. Petty's opinion to the state of medical knowledge and the standard of care in 1963.

Appellee raised one additional ground for objection to the following portion of Dr. Petty's testimony in response to this hypothetical question:

What is your medical opinion, based on reasonable medical probability, as to whether a physician who was exercising ordinary care for such a patient would have submitted the patient to this type of surgery for asthma or emphysema, or a combination of both of such illnesses?

Answer by Dr. Petty:

In my opinion, ordinary care would not include submitting the child to glomectomy. This operation is of no benefit to a child with a medical history described in the question.

Appellee complains that the response to this question answered the ultimate issue of fact of whether Dr. Phillips' conduct constituted negligence and thus invaded the province of the jury in violation of the rule established in *Snow v. Bond*, 438 S.W.2d 549 (Tex.1969). Our supreme court in *Snow v. Bond* expressed this rule in the following paragraph:

What constitutes negligence or malpractice is a mixed question of law and fact that can only be determined by the trier of fact on the basis of evidence admitted and instructions given by the court. A medical expert is not competent to express an opinion thereon. See *Houston & T. C. R. Co. v. Roberts*, 101 Tex. 418, 108 S.W. 808. The question of what a reasonable and prudent doctor would have done under the same or similar circumstances must also be determined by the trier of fact after being advised concerning the medical standards of practice and treatment in the particular case. An expert witness can and should give information about these standards without summarizing, qualifying or embellishing his evidence with expressions of opinion as to the conduct that might be expected of a hypothetical doctor similarly situated. The latter is not an appropriate subject for expert testimony. See *Phoenix Assur. Co. of London v. Stobaugh*, 127 Tex. 308, 94 S.W.2d 428.

The proposition that a medical expert witness is not competent to testify as to whether the defendant doctor's action constituted negligence or malpractice has been reiterated in many Texas cases. *See, Burks v. Meredith*, 546 S.W.2d 366 (Tex.Civ.App.— Waco 1977, writ ref'd n. r. e.); *Lee v. Andrews*, 545 S.W.2d 238 (Tex.Civ.App.— Amarillo 1976, cause dismissed); *Smith v. Guthrie*, 557 S.W.2d 163 (Tex.Civ.App.— Fort Worth 1977, writ ref'd n. r. e.). An examination of the cases reveals that this rule has been variously expressed and applied and no exact concept of what violates the rule has emerged. It is clear that a medical expert would not be permitted to state that the defendant doctor did or did not commit malpractice or negligence, nor could he state directly that what the defendant did was "wrong."

■ The testimony here however did not express such a direct opinion. Rather than stating that Dr. Phillips' treatment of the plaintiff was negligent, Dr. Petty indicated that in his opinion the carotid body surgery would not fall within the boundaries of ordinary care. We believe that in this statement Dr. Petty was merely establishing a standard of care. This is the purpose

for which medical expert testimony is required in medical malpractice cases. *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949).

The testimony of Dr. Petty in response to this hypothetical question was essential to appellant's case in establishing the standard of care by which Dr. Phillips' treatment was to be judged. The trial court erred in excluding this testimony and the error was harmful. We must therefore reverse the judgment in favor of Dr. Phillips and remand the cause for a new trial. Appellant's first point of error is sustained.

■ In light of the necessity for another trial we will consider appellant's other points of error. His second and third points of error complain of the exclusion of Dr. Petty's testimony in response to two different questions. One of these was a hypothetical question involving the case of a four and one-half year old child and the other concerned a sixty-six year old man on whom Dr. Phillips had operated and whom Dr. Petty had subsequently treated. These questions and Dr. Petty's responses thereto were immaterial and irrelevant and were properly excluded as they dealt with matters collateral to the issues in this case, i. e., the condition and care of persons not similarly situated to the appellant and not parties to the cause. *Goodnight v. Phillips,* 458 S.W.2d 196 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n. r. e.). We note also that appellant did not attempt to limit Dr. Petty's responses to these questions to the time frame within which the facts of appellant's case occurred. As noted in our discussion of appellant's first point of error, such limitation was essential in this cause.

■ Appellant's fourth point of error complains of the exclusion of other testimony by Dr. Petty in which he expresses his views on the usefulness of carotid body surgery in the treatment of emphysema and bronchitis, and his opinion as to the proper treatment of those conditions. We have examined this testimony carefully and conclude that it was properly excluded because Dr. Petty was, again, not limited in his testimony to the period of time in which Dr.

Phillips performed the surgery on appellant. Clearly Dr. Petty is expressing his opinion of this type of surgery as of 1972:

A. The accepted, in my opinion, best treatment for emphysema and chronic bronchitis is a combination of the use of drugs such as antibiotics, the systematic use of inhaled aerosols to help combat the disease, and the application of physical medicine techniques designed to improve breathing efficiency and to promote the physical reconditioning of the patient. The removal of the carotid body is not an accepted procedure for the cure or treatment of emphysema or asthma or chronic bronchitis. The reason that it is not accepted is as follows: The carotid body is important in the respiration, and its removal robs the body of one of the regulatory mechanisms of breathing. Nonetheless, the procedure has been proposed really without much scientific rationale, tried by a number of physicians worldwide; *found ineffectual* and abandoned. In my own judgment, the procedure is not only not beneficial, but potentially harmful.

The concluding portion of this testimony indicates that Dr. Petty's opinion as to the treatment for asthma is expressed of the year in which his deposition was taken. The record shows that the operation on appellant was performed during the time in which the carotid body surgery was being proposed and performed by a number of physicians worldwide. It was only subsequent to 1963 that it was generally found to be ineffectual and was abandoned. The current state of medical knowledge may regard carotid body surgery as totally discredited, as Dr. Petty's testimony indicates. The question in this case, however, is whether Dr. Phillips undertook "a form of treatment which a reasonable and prudent member of the medical profession would not have taken under the *same or similar circumstances*" (emphasis added). *Hood v. Phillips, supra,* at 165. The circumstances

to be considered include the state of medical knowledge *at the time the complained of treatment was performed.* Advancements in medical knowledge between that time and the time of trial cannot properly be taken into account in judging whether the physician behaved in a reasonable and prudent manner before these later developments took place in the medical community. The later advancements could not have been available to Dr. Phillips in 1963, and the jury should not be allowed to judge his treatment under those standards. The evidence was properly excluded and appellant's fourth point of error is overruled.

Appellant complains in his fifth point of error of the refusal of the trial court to admit a report from the New England Journal of Medicine authored by Dr. Morris Segal and Dr. Mauricio J. Dulfano. This point contends that the trial court erred in not allowing appellant to use the report to impeach appellee's expert witness Dr. Overholt on cross-examination. The report in question is a study of fifteen patients who had undergone carotid surgery. It concludes that the surgery had no objective beneficial effect upon the patients studied. At trial Dr. Overholt recognized Dr. Segal, co-author of the report, as an authority in the medical treatment of emphysema. Furthermore, he stated that all but one of the fifteen patients involved in the study had been his patients and that he had sent them to Dr. Segal for treatment after the carotid body surgery had not been successful. Dr. Overholt indicated that he had not expected, nor claimed that the surgery was successful in helping all persons with asthma and emphysema and that he had sent these fourteen patients to Dr. Segal, after he determined that the surgery had been unsuccessful on them, to see if they could be helped by other means. He stated that the report was not accurate in its conclusion that carotid body surgery was not a useful procedure because it was based solely on the cases of admitted failures and had not taken into account any patients for whom the surgery had proved beneficial.

■ We believe that this report should have been admitted for the purpose of cross-examination. The report was co-authored by a physician whom the witness acknowledged as an authority in his field of medicine, both on the witness stand and by referring his own patients to him. Indeed the report involved the evaluation of Dr. Overholt's own carotid body surgical patients. We do not believe that a report so closely linked to the witness' own experiences with the procedure in question should be excluded from cross-examination of that witness merely because he does not agree with its conclusions. We hold that when a medical expert witness has acknowledged another physician as an authority in his field of medicine by referring patients to him, a published medical report authored by that authority based upon his examination of those same patients is admissible for impeachment purposes on cross-examination of the medical witness. Any explanation which the witness can offer as to why he disagrees with the conclusion of the report is, of course, also admissible. But such disagreement would relate to the weight to be given to that report by the jury and does not preclude it from being admitted. Appellant's fifth point of error is sustained.

We wish to reemphasize that on remand and retrial of this case the questions to the expert witnesses should comply with the guidelines established by our Supreme Court in the cases of *Snow v. Bond, supra; Hood v. Phillips, supra*; and *Bowles v. Bourdon, supra.*

Appellant's points of error numbers six through nine complain of the sufficiency of the evidence to support the jury's answers to certain of the special issues. Since the case must be remanded for a new trial it is unnecessary for us to comment on the state of the evidence as to these points.

■ Point of error number ten asserts that as a matter of law a physician in 1963, would not have submitted a minor patient to carotid body surgery. We cannot agree that this is a question to be resolved as a matter of law. It is an issue for the trier of fact to decide based upon the evidence ad-

duced at trial as to the standard of care applicable in the circumstances. Appellant argues that a parent cannot consent to medical treatment of a minor child which is detrimental to his health or well being and that the child can renounce such consent upon his coming of age. Appellant cites no authority for this proposition, but even if it is valid the question whether the treatment in fact was detrimental to the child is one for the trier of fact to determine based upon the evidence. Appellant's tenth point of error is overruled.

In his final point of error appellant argues that the trial court erred in granting Dr. Phillips' motion for severance of appellant's cause of action against the Harris County Medical Society and in abating that suit pending determination of the suit against Dr. Phillips. Rule 174(b) Tex. R.Civ.P. provides that the court may order a separate trial of any claim "in furtherance of convenience or to avoid prejudice". This rule has been held to bestow upon the trial court broad discretion in the matter of the severance of causes, and the trial court's action ordering a severance will not be disturbed on appeal except for an abuse of that discretion. *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677 (1976); *Hamilton v. Hamilton*, 154 Tex. 511, 280 S.W.2d 588 (1955). Appellant has asserted two separate and distinct claims against Dr. Phillips and the Medical Society, as noted in our introductory paragraph. The claim against the Medical Society is based upon its alleged negligence in failing to act upon complaints filed against Dr. Phillips and alleged misrepresentations in informing appellant's mother that no such complaints had been filed. The claim against Dr. Phillips was based upon alleged malpractice in the performance of a specific treatment upon appellant. Thus the two causes of action do not arise out of the same transaction or series of transactions and the evidence as to the two claims would not be the same. Furthermore, the evidence against the Medical Society consists of its records of correspondence and complaints involving Dr. Phillips, some of which are dated over 10 years prior to the surgery in issue in this cause. Such reports, if introduced into evidence, could have an extremely prejudicial effect against Dr. Phillips although they relate to matters totally separate from and collateral to the surgery performed on appellant and would not be admissible as against Dr. Phillips in this case. We cannot find that the trial court abused its discretion in ordering the severance to avoid prejudice under Rule 174(b) Tex.R.Civ.P.

As to the order granting the defendant Medical Society's plea in abatement, the order was granted in the severed and separate cause of action and is not before us in this appeal from the trial of the cause of action against Dr. Phillips.

The judgment of the trial court is reversed and the case is remanded to that court for a new trial.

Reversed and remanded.