Affirmed and Memorandum Opinion filed April 3, 2007








Affirmed
and Memorandum Opinion filed April 3, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01059-CV

____________

 

YOLANDA MONTGOMERY, INDIVIDUALLY
AND AS NEXT FRIEND AND NATURAL PARENT OF L=JAUNET SHANTELLE MONTGOMERY AND
DONOVAN LEON MONTGOMERY, Appellant

 

V.

 

JACOBO VARON, M.D., Appellee

 



 

On Appeal from the 55th
District Court

Harris County, Texas

Trial Court Cause No. 03-48998

 



 

M E M O R A N D U M  O P I N I O N

This is a health-care liability case in which a patient,
individually and as next friend of her two children, appeals a judgment in
favor of the hand surgeon who treated her.  The patient essentially asserts
that the trial court abused its discretion in excluding from the jury=s consideration
evidence regarding the surgeon=s reputation and treatment of other
patients. We affirm. 








I.  Factual
and Procedural Background

In late 2001, Yolanda Montgomery visited her primary-care
physician complaining of various problems in her hands such as loss of
strength, bad cramping, difficulty holding a grip, and swelling.  Her
primary-care physician told her to avoid using her right hand, to use a brace
on her wrist, and to return in two weeks if the problems persisted. 
Approximately three weeks later, Montgomery returned to her doctor because the
problems in her hands had not gotten any better.   At that time, her
primary-care physician sent her to a doctor who specialized in the treatment of
hands. 

Montgomery then began seeing Dr. Brett L. Garner, D.C. 
During her first office visit in January 2002, Montgomery identified a pain
threshold of about an eight or nine, with a ten being the most painful.   She
complained of numbness in her fingers, sharp pain in her wrist and arm, a
weakened grip, night awakenings due to numbness and pain, and inflammation. 
Dr. Garner performed a physical examination and found a positive Finkelstein=s test, which is a
provocative test to determine if there is tenosynovitis in the first dorsal
compartment. Dr. Garner=s proposed treatment plan included
intensive physical therapy, a referral for an MRI and EMG, a referral to
another doctor for pain management, and, finally, a referral to appellee Dr.
Jacobo Varon if Montgomery=s condition did not improve in two
weeks.   Prior to receiving the MRI or EMG results,  Dr. Garner=s tentative
diagnosis was severe carpal tunnel and possible stenosing tenosynovitis in the
right hand and wrist, and mild carpal tunnel in the left hand and wrist. 








In late February 2002, Montgomery had her first appointment
with Dr. Varon.  She informed him that she had completed a few months of
physical therapy under Dr. Garner=s supervision and
that her condition had not improved.  Montgomery complained of the same
problems (numbness and swelling in both of her hands and wrists) and that the
pain interfered with her sleeping and driving.  Dr. Varon performed a physical
exam, making a tentative clinical diagnosis of median neuritis and
tenosynovitis.  Dr. Varon stated that he would review the MRI ordered by Dr.
Garner, and he recommended that Montgomery continue with physical therapy and
proceed with an EMG exam for nerve conduction.  

In April 2002, Montgomery returned to Dr. Varon after she
had completed the MRI ordered by Dr. Garner as well as the EMG exam for nerve
conduction ordered by Dr. Varon.  During the April visit, Montgomery stated
that the pain and swelling in her hands and wrists disrupted her sleep at least
three times per night.   She also had problems flexing her fingers, and the
pain was so excruciating that she did not feel like doing anything.  The MRI
ordered by Dr. Garner and interpreted by J.S. Lee, M.D. revealed tenosynovitis
and peritendinitis.  The EMG/NCV studies ordered by Dr. Varon (and interpreted
by Robert Lowry, M.D.) revealed mild to moderate right carpal tunnel syndrome. 
After reviewing the results of the MRI and EMG, as well as his findings from
the physical examination, Dr. Varon=s main diagnosis
was tenosynovitis.  He also diagnosed mild carpal tunnel syndrome. Because
Montgomery already had attempted physical therapy and was not improving, Dr.
Varon recommended surgery.[1]









In May 2002, Montgomery went to Dr. Edward Lewis, M.D., a
pain management physician, for treatment.  Dr. Lewis performed a physical exam
and, after reviewing the MRI and EMG results, also diagnosed Montgomery with
tenosynovitis in both hands.  Montgomery continued her physical therapy up
until the time she was scheduled to have surgery.   On June 18, 2002, the day
before her scheduled surgical procedure, Montgomery signed, in front of a
witness, the disclosure and consent form.  The procedures to which she
consented (as stated on the form) included (1) tenosynovectomy right wrist, (2)
tenolysis flexor tendons of the index, middle, and ring finger, and (3)
tenosynovectomy radial carpal, middle carpal, and distal ulnar carpal
compartments.  Dr. Varon discussed these procedures with Montgomery in detail.
The next day, Dr. Varon performed the surgery on Montgomery=s right hand and
wrist.  Dr. Varon performed a number of surgical procedures including the
tenolsysis and tenosynovectomies as documented in his operative report.  He
also performed an incidental carpal tunnel release on her right hand during the
surgery due to the EMG findings of mild carpal tunnel on the right side.  Dr.
Varon testified that all of these procedures were medically necessary and
appropriate.[2] 
The medical records admitted at trial indicated that Montgomery was happy with
the results of the surgery as she indicated improvement in the pain and
functioning of her right hand.  

In August 2002, during a post-operative visit, Dr. Lasanta
indicated that Montgomery had the following improvements in her hands and
wrists: 

!       decreased inflammation of both hands and
wrists; 

!       increase in grip strength and overall hand
strength; 

!       increase in sensation and two point
discrimination; 

!       increase in strength to both hands; 

!       decrease in overall pain to bilateral
hands/wrists; and

!       increase in
ROM [range of motion] of right hand. 

Dr.
Varon also documented improvement in Montgomery=s right hand and
wrist after the surgery in the months of July, August, and September 2002. 








In July 2002, Montgomery brought up the possibility of a
surgical procedure on her left hand.  Dr. Varon discussed surgery of the left
hand in August 2002, and again in September 2002.  Montgomery stated that
between June 2002 and October 2002, the symptoms in her left hand continued to
worsen despite intensive physical therapy and treatment.  In October 2002, Dr.
Lasanta ordered additional nerve conduction studies on Montgomery=s right and left
hands.  Dr. Robert Lowry, M.D. interpreted these studies and concluded they did
not reveal any evidence of carpal tunnel in the left hand and wrist.  Dr. Varon
then discussed with Montgomery performing a modified tenosynovectomy of her
left wrist and tenolysis of multiple tendons in her left wrist and hand. 
Montgomery gave her consent, and in late October 2002, Dr. Varon performed
these procedures.

Montgomery testified that the foregoing medical procedures
did not help the pain or the functioning of her hands and that she has been
unable to return to work due to the condition of her hands.  However, Dr.
Gerard Gabel, M.D. stated that when he performed an independent medical exam in
February 2003 (eight months after the surgery on the right hand and four months
after the surgery on the left hand), he believed that Montgomery could return
to work with the restriction of no lifting or carrying more than five pounds. 
He testified that Montgomery had no swelling in her hands, had no motion
restrictions, and could reach overhead and perform basic keyboarding skills. 
In August 2004, Dr. Gabel saw Montgomery for a follow-up evaluation.  Dr. Gabel
referred Montgomery for a Functional Capacity Evaluation (AFCE@) to assess her
current capacity and to determine if she was putting forth an appropriate
amount of effort during testing.  Dr. Gabel testified that if the FCE test
indicates the patient is not putting forth an appropriate effort, this raises
concerns as to weather the patient is exaggerating her symptoms.  Dr. Gabel
testified that according to the test results, Montgomery was not putting forth
consistent or maximum effort.  The results indicated that she passed twelve of
the thirty-seven validity criteria during the FCE, which suggested very poor,
voluntary submaximal effort not related to pain, medical impairment, or
disability.  Dr. Gabel agreed that due to Montgomery=s failure to
cooperate, he could not determine her true level of functioning. 

Prior to trial, Dr. Varon filed a motion in limine in which
he requested that Dr. Gabel be precluded from mentioning or offering any
opinions in regard to Dr. Varon=s treatment of other patients, as well as
any opinions on Dr. Varon=s reputation among hand surgeons in the
medical community.  In the motion in limine, Dr. Varon also requested that Dr.
Gabel be restrained from mentioning or offering any opinions relating to any
other reports or scans interpreted by Dr. J.S. Lee, M.D.  The trial court
granted Dr. Varon=s motion in limine.  








At trial, Montgomery sought to introduce testimony by Dr.
Gabel in an attempt to show that Dr. Lee was a disreputable and incompetent
doctor and that his diagnoses are generally considered unreliable by the medical
community in Houston, Texas.  Montgomery states that this testimony was offered
to show that because Dr. Lee allegedly misread or over-read films on other
patients, he must have misread or over-read Montgomery=s film, causing
Dr. Varon to mistreat Montgomery.  Montgomery also sought to introduce
testimony from Dr. Gabel regarding Dr. Varon=s alleged
mistreatment of several other patients.   The trial court refused to admit the
evidence  Montgomery tendered in an offer of proof during trial.  A jury
returned a verdict in favor of Dr. Varon.

II. Issues Presented

Montgomery raises the following issues on appeal: 

(1)     The trial court erred in (a) granting Dr.
Varon=s motion to exclude the testimony
of Dr. Gabel regarding his opinion of Dr. Varon=s reputation in the field of hand surgery and (b) by
excluding Dr. Gabel=s testimony regarding unreliability
of the MRI exams upon which Dr. Varon relied. 

(2)     The trial court erred in ordering Dr. Gabel
to refrain from testifying about (a) prior experiences with patients on whose
hands Dr. Varon had operated and (b) the alleged evidence of operation
malpractice  he found in the examination of those patients. 

(3)     The trial court erred in ordering Dr. Gabel
to refrain from testifying about  prior experiences  with patients who had MRIs
read by Dr. Lee and his observation of the alleged malpractice inherent in Dr.
Lee=s reports on MRIs. 

 

III.  Analysis

Did the trial court err in excluding the plaintiff=s expert=s testimony concerning his opinions
of the defendant doctor=s reputation in the field of hand surgery and of the
defendant=s treatment of other patients?








In her first two
issues, Montgomery contends the trial court erred in excluding  Dr. Gabel=s testimony
regarding Dr. Varon=s reputation in the medical community and 
Dr. Varon=s alleged mistreatment of other patients.  Dr. Varon
contends that Montgomery waived any challenge to the trial court=s ruling on this
evidence because she failed to specify the purpose for which the evidence was
offered and failed to give the trial court reasons the testimony was
admissible.  Thus, as a threshold matter, we must determine whether Montgomery
preserved error on her first two issues.   

In his motion in
limine, Dr. Varon urged the trial court to impose the following restrictions: 

That Gerard Gabel, M.D. refrain
from mentioning, suggesting, commenting on or offering opinions in any manner
regarding Defendant Dr. Varon, or any other physician, chiropractor, D.O. or
person=s treatment of
patients other than Ms. Montgomery which Dr. Gabel knows about or has
personally seen in the past, for the reason that such other patient=s treatment would
be wholly irrelevant to any issue in this case and would be mentioned to the
jury solely for the purpose of prejudicing the jury through collateral matters,
the merits of which could not possibly be litigated in this lawsuit. The
testimony of any such matters is hearsay and could not be fairly
cross-examined, would be made solely for the purpose of bolstering Dr. Gabel=s testimony in
this case against Dr. Varon and such would be unfair and prejudicial as such is
irrelevant and immaterial to any issue in this case. 

Before
the jury was brought into the courtroom for the afternoon session on June 10,
2005, the trial judge raised this matter, stating that he believed the evidence
was irrelevant and inadmissible.  








To preserve an error in the exclusion of evidence, a party
must: (1) attempt during the evidentiary portion of the trial to introduce the
evidence, (2) if an objection is lodged, specify the purpose for which it is
offered and give the trial court reasons why the evidence is admissible, (3) obtain
a ruling from the trial court, and (4) if the trial court rules the evidence
inadmissible, make a record, through a bill of exceptions, of the evidence the
party desires admitted.  Estate of Veale v. Teledyne Indus., Inc., 899
S.W.2d 239, 242 (Tex. App.CHouston [14th Dist.] 1995, writ denied); Spivey
v. James, 1 S.W.3d 380, 385 (Tex. App.CTexarkana 1999,
pet. denied).  Although Montgomery made an offer of proof, she failed to make
any argument as to why the evidence was improperly excluded or why it should
have been admitted.  Montgomery also failed to specify the purpose for which
the evidence was offered.  See Continental Coffee Prods. Co. v. Cazarez,
903 S.W.2d 70, 80 (Tex. App.BHouston [14th Dist.] 1995), rev=d in part on other
grounds, 937 S.W.2d 444 (Tex. 1996).  Because both steps are required to avoid
waiver, Montgomery failed to preserve her first two issues for appellate
review.[3]  








In any event, even if Montgomery had properly preserved her
complaint for review, we still would conclude that the trial court did not
abuse its discretion in excluding the evidence contained in Montgomery=s offer of proof. 
In this offer, Dr. Gabel testified that over the last fifteen years he had seen
approximately fifty to one hundred reports from Dr. Varon regarding Dr. Varon=s treatment or
surgical care of patients who also were examined by Dr. Gabel.  From reviewing Dr.
Varon=s records and
reports regarding these patients, Dr. Gabel observed Aprimarily an
indication of appropriateness of the treatment.  And in many cases, the
treatment was inappropriate.@  Dr. Gabel testified that he had seen
many patients, prior to surgery, who did not have indications for the surgery
that Dr. Varon later performed on them.  Dr. Gabel stated he had seen many
patients whose documentation of their status before Dr. Varon=s surgery
indicated that Dr. Varon had performed an inappropriate surgery.   Dr. Gabel
also testified that he knew other hand surgeons who share his opinions of Dr.
Varon.  

In his testimony, Dr. Gabel did not refer to any documents
or any particular patients.  He did not give examples of the types of allegedly
unnecessary surgeries he claims Dr. Varon has performed or state whether these
surgeries were similar to the procedures at issue in this case.  As to the
patients on whom Dr. Varon operated after Dr. Gabel examined them, Dr. Gabel
did not testify as to whether he knew if they had experienced any change in
their condition or diagnosis after he examined them and before Dr. Varon
operated on them.  Furthermore, Dr. Gabel testified as to many patients over a
period from 1990 to 2005, whereas the surgeries in question occurred in 2002. 
On this record, we could not conclude that the trial court abused its
discretion in determining that the testimony was not relevant or that even if
relevant, its probative value is substantially outweighed by the danger of
unfair prejudice.  See Tex. R.
Evid. 401, 403; Guidry v. Phillips, 580 S.W.2d 883, 887 (Tex.
Civ. App.CHouston [14th Dist.] 1979, writ ref=d n.r.e.)
(concluding that trial court did not err, in surgical malpractice trial, in
excluding expert testimony regarding other patients treated by defendant
surgeon and later seen by the expert).  Accordingly, we overrule Montgomery=s first two
issues.[4]

          Did the
trial court err in excluding the plaintiff=s expert=s testimony
concerning the radiologist=s alleged
mistreatment and misdiagnoses of patients other than the plaintiff? 








In her third issue, Montgomery contends the trial court
erred in excluding Dr. Gabel=s testimony regarding Dr. Lee=s treatment of
other patients and Dr. Lee=s alleged malpractice in mis-reading the
MRIs of several other patients.  Again, as a threshold matter, we must
determine whether Montgomery preserved error. 

 In his motion in limine in regard to this evidence, Dr.
Varon urged as follows: 

That Gerard Gabel, M.D. refrain
from mentioning, suggesting, commenting on or offering opinions in any manner
relating to any MRI, CT scan or other radiological reports he has seen from
J.S. Lee, M.D. on patients other than Ms. Montgomery as being always over-read
and/or inaccurate for the reason that such matters would be wholly irrelevant
to any issue in this case and would be mentioned to the jury solely for the
purpose of prejudicing the jury through collateral matters, the merits of which
could not possibly be litigated in this lawsuit.  The testimony of any such
matters would be meaningless, irrelevant, and immaterial to any issue in this
case, could not be fairly cross-examined and would be made solely for the
purpose of bolstering Dr. Gabel=s testimony in this case against Dr. Varon=s treatment of Ms.
Montgomery. 

We conclude this issue was not properly preserved for
appellate review.  Although Montgomery included some evidence in this regard in
her offer of proof, she failed to state why the evidence was improperly
excluded or why it should have been admitted. Montgomery also failed to specify
the purpose for which the evidence was offered.  Continental Coffee Prods.
Co., 903 S.W.2d at 80; see also Vandever v. Goettee, 678 S.W.2d 630,
635 (Tex. App.CHouston [14th Dist.] 1984, writ ref=d n.r.e.). 
Accordingly,  we conclude  Montgomery failed to preserve her third issue for
our review.








In any event, even if Montgomery had properly preserved her
complaint for review, we still would conclude that the trial court did not abuse
its discretion in excluding the evidence regarding Dr. Lee contained in
Montgomery=s offer of proof.  Dr. Gabel testified that the Texas
Workers= Compensation
Commission removed Dr. Lee from its approved doctors list and that every
colleague and every radiologist with whom Dr. Gabel has interacted believes
that Dr. Lee has a Aless than optimum reputation.@  Dr. Gabel stated
that  Dr. Lee=s MRIs often have to be reread by another radiologist,
and Dr. Gabel indicated that Dr. Lee=s readings of MRIs
are often inappropriate and Dr. Lee finds Aabnormalities@ that are not
indicated by the MRI.  Montgomery states that this testimony was being offered
to show that because Dr. Lee allegedly misread or over-read films on other
patients, he must have misread or over-read Montgomery=s film, causing
Dr. Varon to mistreat Montgomery.  This contention, however, is pure
speculation as Dr. Gabel never testified that he personally reviewed Montgomery=s MRI or Dr. Lee=s report on the
MRI, or even that Dr. Lee misread Montgomery=s MRI.  Through
her offer of proof regarding Dr. Lee=s reputation and
his alleged over-reads of MRIs of other patients at unknown times and in
unknown conditions, Montgomery did not establish how this testimony is material
to Dr. Lee=s interpretation of Montgomery=s MRI scans.   On
this record, we could not conclude that the trial court abused its discretion
in determining that the testimony was not relevant or that even if relevant,
its probative value is substantially outweighed by the danger of unfair
prejudice.  See Tex. R. Evid. 401,
403; Guidry, 580 S.W.2d at 887.  Accordingly, we overrule Montgomery=s third issue. 

IV. Conclusion  

Although Montgomery made an offer
of proof in regard to the proffered evidence she claims the trial court
erroneously excluded, she failed to state why this evidence was improperly
excluded or why it should have been admitted.  Thus, Montgomery failed to preserve
error on her three appellate issues.  In any event, even if Montgomery had
properly preserved her complaints for appeal, we still would conclude that the
trial court did not abuse its discretion.  Accordingly, we affirm the trial
court=s judgment.  

 

 

 

 

/s/      Kem Thompson Frost

Justice

                                                              

 

 

Judgment rendered
and Memorandum Opinion filed April 3, 2007.

Panel consists of
Chief Justice Hedges and Justices Frost and Seymore.









[1]  Dr. Varon would not have performed surgery based only on mild carpal
tunnel syndrome without the other findings. 





[2]  Montgomery disputes medical necessity; she testified
that she consented to what she thought would be a Carpal Tunnel Release (ACTR@) operation for
her right hand and wrist.  She contends that the remainder of the operations
Dr. Varon allegedly performed were unnecessary and outdated. 





[3]  Montgomery also contends that because Dr. Varon
opened the door to Dr. Gabel=s testimony
concerning his reputation, the trial court erred in excluding Dr. Gabel=s testimony.  This argument also  fails. First, when
Montgomery made her offer of proof, she never presented the Aopened the door@
theory as a reason for admission of this evidence.   Second, and more
importantly, Montgomery never raised this argument during Dr. Varon=s testimony in which he allegedly opened the door to
testimony concerning his reputation.  To preserve error for appellate review, Aa party must present to the trial court a timely
request, objection, or motion, state the specific grounds therefor, and obtain
a ruling.@ Clark v. Trailways, Inc., 774 S.W.2d 644, 647
(Tex. 1989).  Moreover, an objection at trial not comporting with the complaint
on appeal preserves nothing for appellate review.  Scurlock Permian Corp. v.
Brazos County, 869 S.W.2d 478, 484 (Tex. App.BHouston [1st Dist.] 1993, writ denied).   Because Montgomery failed to
raise her Aopened the door@
theory in the trial court, we do not review whether this was an adequate basis
for admission of Dr. Gabel=s testimony
concerning Dr. Varon=s reputation. 

 

 





[4]  In her first issue, Montgomery also states that the
trial court erred in excluding Dr. Gabel=s
testimony regarding unreliability of the MRI exams upon which Dr. Varon relied.
To the extent this issue  encompasses Dr. Gabel=s testimony regarding Dr. Lee, it overlaps with Montgomery=s third issue.  To the extent this issue refers to
some other evidence, the record reflects that Montgomery did not preserve error
in the trial court or brief any alleged error on appeal.  See Tex. R. App. P. 33.1(a), 38.1(h).