799 P.2d 15

**Kimberly MULHERN, on her own behalf and as Personal Representative of the Estate of Daniel Mulhern, Jr., deceased, and on behalf of the surviving children, Daniel Anthony Mulhern III; Brandon Mulhern; Dan Mulhern and Margaret Mulhern, husband and wife, Plaintiffs/Appellants,**

v.

**CITY OF SCOTTSDALE, a municipal corporation; Michael Gannon, Chief of Police, Scottsdale Police Department; Hal Nevitt and Jane Doe Nevitt, husband and wife, Defendants/Appellees.**

No. 2 CA–CV 90–0036.

Court of Appeals of Arizona,
Division 2, Department A.

May 10, 1990.

Review Denied Oct. 23, 1990.

Barry H. Hart, Ltd. by Barry H. Hart, Phoenix, for plaintiffs/appellants.

Jennings, Strouss & Salmon by Michael A. Beale, Jefferson L. Lankford and Michael J. O'Connor, Phoenix, for defendants/appellees.

## OPINION

HOWARD, Judge.

On February 14, 1986, Daniel Mulhern, Jr. was shot and killed by Hal Nevitt, a Scottsdale police officer on patrol duty. Plaintiffs filed a complaint for wrongful death, with additional counts by the parents of the deceased against Nevitt, Scottsdale Police Chief Michael Gannon and the City of Scottsdale for negligent and intentional infliction of emotional distress based on the negligent assignment of patrol duties. The wrongful death claim, based on the alleged negligence of Nevitt, was separated from the other counts and tried by a jury which returned a unanimous defense verdict. Because of that verdict, the trial court entered judgment in favor of the defendants on all counts. Plaintiffs made a motion for a new trial which was denied. This appeal followed.

## FACTS

The evidence presented at trial showed that the deceased was suffering from psychological problems and alcoholism. He had been drinking on the day of the incident at his parents' home where he was staying as kind of a "halfway house." He began acting strangely, repeatedly pointing a loaded .25–caliber pistol at his head and pulling the trigger. The weapon did not fire only because Mulhern, apparently unfamiliar with the mechanism of the auto-

matic pistol, failed to chamber the first round.

Mulhern's parents, being unable to calm or disarm him, called the Scottsdale police who responded immediately, sending both uniformed Officer Hal Nevitt as the closest patrol unit and plain clothes Detective Paul Blackford. The officers were informed that there was a man with a gun at the Mulhern house.

The two officers arrived at the same time, but Blackford drove past the house and had to backtrack in order to find it. Nevitt left his vehicle first but he did not immediately draw his weapon. Nevitt saw Mulhern's father but not Mulhern, spoke to the father and confirmed that Mulhern had a weapon.

According to Nevitt, Mulhern then emerged from some bushes in front of the house armed with a pistol. Nevitt and Blackford drew their weapons. Nevitt ordered Mulhern to stop and/or drop his weapon. Mulhern ignored the command and instead moved slowly across the front of the house toward the driveway holding the automatic pistol in his right hand. Nevitt again ordered Mulhern to stop and again Mulhern ignored the command. He abruptly changed speed and direction. Nevitt was crouched behind a pillar at the other end of the driveway for protection with his weapon drawn. Mulhern charged directly at Nevitt at a run or trot, his arms extended, waving his left arm in the air and screaming at the officer. Some eye-witnesses reported that Mulhern also pointed his gun at the officer or at bystanders, raised the gun, or fired his weapon. Others testified that Mulhern never raised the weapon and never fired at Nevitt. Nevitt testified that Mulhern got to within five to ten feet of him when he finally fired. The time from Nevitt's arrival at the scene until the shooting was less than 95 seconds.

Three expert witnesses in the use of deadly force by police officers testified at trial. All of them, including the plaintiffs' expert, agree that if the deceased ran at the officer with his right arm extended holding the pistol, then the officer was unquestionably justified in shooting.

Plaintiffs' expert witness even agreed that if the suspect were immobile, holding his weapon limply at his side, whether the officer should shoot would be a very close call. The expert testimony was that any overt movement by an armed suspect justifies the officer's use of deadly force because of the unpredictability of the suspect and the officer's disadvantage in having to react to the suspect's actions. Even a change in facial expression would be enough, according to the plaintiffs' own expert.

## PRETRIAL PROCEDURE—MOTION IN LIMINE

Prior to trial the trial court granted Gannon's and the City's motion in limine excluding evidence as to a 1984 internal investigation of Nevitt, the involvement of Nevitt in an alleged obstruction of a Phoenix Police Department criminal investigation, Nevitt's use/sale of narcotics in 1984 and consumption of alcohol off duty prior to December 1, 1985, use of alcohol after the shooting, the investigation as to Nevitt's prior drug problems, the arrest of Nevitt on March 28, 1986, on conspiracy charges, racketeering, transportation, importation, sale and transfer of drugs, Nevitt's suspension or termination from the Scottsdale Police Department, his plea of no contest to some of the drug charges and his seven-year sentence to the Department of Corrections. The trial court also granted Nevitt's motion in limine prohibiting the use of Nevitt's felony convictions on the narcotics charges for impeachment purposes.

## ISSUES

Plaintiffs contend the trial court erred in dismissing their negligent assignment claim against defendants City and Gannon, in granting Nevitt's motion for separate trials and in granting the motions in limine.

## DISCUSSION

1. *Dismissal of the Negligent Assignment Claim.*

Plaintiffs' negligent assignment claim was based on Gannon's and the City's al-

leged negligence in assigning Nevitt to patrol duties in view of his alcoholism and drug addiction. Plaintiffs contend that since this is an independent action based on the City's and Gannon's negligence and not on Nevitt's, they still have a viable claim in spite of the jury verdict. We do not agree.

In order for the employer to be held liable for negligent hiring, retention or supervision, the employee must have committed a tort. *Focke v. United States*, 597 F.Supp. 1325 (D.Kan.1982); *Louis Marsch, Inc. v. Pekin Ins. Co.*, 140 Ill.App.3d 1079, 96 Ill.Dec. 386, 491 N.E.2d 432 (1985); *Tindall v. Enderle*, 162 Ind.App. 524, 320 N.E.2d 764 (1974); *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116 (1986); *Guy v. Lenark Fuel Co.*, 72 W.Va. 728, 79 S.E. 941 (1913). Thus, the employer is not negligent in hiring or retaining the employee as a matter of law if the theory of the employee's underlying negligence fails. *Texas Skaggs, Inc. v. Joannides*, 372 So.2d 985 (Fla.App. 1979).

## 2. *The Granting of Separate Trials.*

A trial court's power to order separate trials is exercised with broad discretion. *Cota v. Harley Davidson*, 141 Ariz. 7, 684 P.2d 888 (App.1984). Rule 42(b), Rules of Civ.Proc., 16 A.R.S., authorizes an order for a separate trial "of any claim" or "of any separate issue" whenever so doing is in "furtherance of convenience or to avoid prejudice," or when separate trials will be conducive to expedition and economy. The trial court here ordered a separate, initial trial of the claim that Nevitt acted negligently in using deadly force. That left for a later trial the claim that the City of Scottsdale and Police Chief Gannon negligently assigned Nevitt to patrol duty. Here, the trial court's order served the purposes of Rule 42 by achieving judicial economy and avoiding prejudice. Deciding first whether Nevitt was negligent in the shooting also shortened the trial.

The evidence that Nevitt betrayed his office as a sworn police officer, became addicted to cocaine, abused alcohol, was charged with the commission of six felonies, pleaded "no contest" to drug and obstruction of justice charges, was at best relevant only to the claims for negligent assignment. Where evidence is admissible with respect to one claim and inadmissible for other purposes, the trial court should order separate trials when necessary to avoid prejudice. *Rutledge v. Arizona Board of Regents*, 147 Ariz. 534, 711 P.2d 1207 (App.1985).

An analogous case is *Guidry v. Phillips*, 580 S.W.2d 883 (Tex.Civ.App.1979). The plaintiff in *Guidry* asserted a negligence claim against a doctor and a negligent supervision claim against a medical society. The medical society had received various complaints against the doctor prior to the alleged malpractice in treating the plaintiff. The evidence of past problems was relevant and admissible on negligent supervision, but inadmissible and prejudicial to the doctor and the malpractice action. The court avoided the "extremely prejudicial effect" inherent in the evidence of prior complaints by properly ordering separate trials. See also *Wilder v. DePiazza*, 481 So.2d 1091 (Ala.1985); *Thomason v. Harper*, 162 Ga. App. 441, 289 S.E.2d 773 (1982) (separate trials of negligent entrustment claims).

The trial court did not abuse its broad discretion in ordering separate trials.

## 3. *The Motions in Limine.*

Plaintiffs contend that the trial judge erred in granting the motions in limine because he excluded evidence to show that the insight and perception of Nevitt were materially impaired on the date of the incident. We do not agree. Plaintiffs offered no evidence that Nevitt was acting under the influence of drugs or alcohol at the time of the incident. Nor was there any evidence of drug or alcohol consumption sufficiently close in time to the incident to permit an inference of intoxication. The trial court does not abuse its discretion in rejecting such evidence under these circumstances. See *Ornelas v. Fry*, 151 Ariz. 324, 727 P.2d 819 (App.1986).

In support of the admissibility of the drug and alcohol addiction evidence, the

plaintiffs offered the deposition of Dr. Macaluso who testified that the insight, judgment and perception of Nevitt were all affected by his chemical dependency on February 14, 1986, to a reasonable degree of medical probability as to have placed Nevitt in the position of wrongfully killing the deceased on that date. Without expressing an opinion as to the admissibility of Macaluso's testimony, we note that he also testified that whether Nevitt behaved normally during the incident is measured by what other typical police officers would do under the circumstances. Dr. Macaluso had no opinion on proper or typical police procedure.

 Nor did any of the other evidence that was excluded by the motion in limine bear on the issue as to whether Nevitt was negligent in his actions. The case actually boiled down to a very narrow factual issue: Did the deceased raise his weapon? If he did, every one of the experts agreed that Nevitt was justified in shooting. Even if he did not raise the weapon, but it was in his right hand dangling at his side, the plaintiffs' own expert witness testified that it was a "close question" as to whether or not Nevitt acted properly in shooting.

As for the refusal to allow the use of the narcotics convictions, 17A A.R.S. Rules of Evid., Rule 609(a) governs impeachment by evidence of conviction and permits the trial judge to exercise discretion to exclude such evidence if it does not appear to have probative value outweighing its prejudicial effect. See also *Wilson v. Riley Whittle, Inc.*, 145 Ariz. 317, 701 P.2d 575 (App.1985). The exercise of this discretion should not be disturbed absent a clear showing of abuse. See *State v. Dixon*, 126 Ariz. 613, 617 P.2d 779 (App.1980). As observed in M. Udall and J. Livermore, Arizona Practice: Law of Evidence § 47 at 87 (2d ed. 1982), Rule 609 changes prior practice in a significant way in that "[a]s a condition to the use of a conviction to impeach the court must find that the probative value on credibility outweighs prejudicial effect." Here, evidence of a drug conviction by a law enforcement officer carried a high potential for prejudice vis-a-

vis its probative value. This is not a case where, due to the absence of witnesses, the credibility of Nevitt was of considerable importance. Cf. *State v. Dalglish*, 131 Ariz. 133, 639 P.2d 323 (1982). The trial court did not abuse its discretion in finding that the probative value of this evidence did not outweigh its prejudicial effect.

Affirmed.

ROLL, P.J., and HATHAWAY, J., concur.