567 S.E.2d 231

**Earline C. SABB, Respondent,**

v.

**SOUTH CAROLINA STATE UNIVERSITY, Appellant.**

No. 25496.

Supreme Court of South Carolina.

Heard Jan. 23, 2002.

Decided July 15, 2002.

418

420

Stephen P. Groves, Sr., Wilbur E. Johnson, Nancy Bloodgood, and Stephen L. Brown, all of Young Clement, Rivers & Tisdale, LLP, of Charleston, for appellant.

John F. Koon, of Koon and Cook, P.A.; and Richard A. McDowell, Sr., of McDowell Law Firm, LLC; of Columbia; and Elizabeth Cook, of Breland & Bernstein, LLP; of Greenville, for respondent.

MOORE, Justice:

We agreed to certify this case from the Court of Appeals to determine the question of whether the exclusivity provision of the Workers' Compensation Act is procedural in nature or whether it involves subject matter jurisdiction. After finding the exclusivity provision does not involve subject matter jurisdiction, we affirm the trial court on the issues raised by appellant.

## PROCEDURAL FACTS

Respondent (hereinafter referred to as Sabb) brought suit against appellant asserting claims of negligent supervision of an employee and negligent retention of an employee, as well as other claims.

Upon the trial's conclusion, the jury returned a verdict for Sabb in the amount of $200,000 in actual damages. Appellant (hereinafter referred to as University) appealed to the Court of Appeals.

We certified the case, upon request by the Court of Appeals, to determine the question of whether the exclusivity provision of the Workers' Compensation Act involves subject matter jurisdiction.

## ISSUES

I. Whether the exclusivity provision [1] of the Workers' Compensation Act is procedural or whether it involves subject matter jurisdiction?

---

1. S.C.Code Ann. § 42–1–540 (1985) (the exclusivity provision), provides:

II. Whether the trial court should have granted appellant's motion for a directed verdict and/or a judgment notwithstanding the verdict?

III. Whether the trial court erred by allowing evidence regarding a co-employee of Sabb?

## ISSUE I

■■■ Because Sabb's claims, as employee of University, arose out of and in the course of her employment, the Workers' Compensation Act (the Act) provides the exclusive remedy for her. *See Dickert v. Metropolitan Life Ins. Co.,* 311 S.C. 218, 428 S.E.2d 700 (1993) (the Act provides exclusive remedy for employees who sustain work-related injury; claim of negligence for failure to exercise reasonable care in selection, retention, and supervision of co-employee is covered by the Act); *Stokes v. First Nat'l Bank,* 306 S.C. 46, 410 S.E.2d 248 (1991) (mental injury arising from non-physical stress is within the Act); S.C.Code Ann. § 42–1–310 (Supp.2000) ("Every employer and employee . . . shall be presumed to have accepted the provisions of [the Act] respectively to pay and accept compensation for personal injury . . . arising out of and in the course of the employment and shall be bound thereby.").

■■■ Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong. *Dove v. Gold Kist, Inc.,* 314 S.C. 235, 442 S.E.2d 598 (1994). Sabb's tort action is clearly a part of the general class of cases which the court of common pleas has the jurisdiction to hear. Accordingly, the trial court in this case had subject matter jurisdiction under the *Gold Kist* definition.[2]

---

The rights and remedies granted by [the Act] to an employee when he and his employer have accepted the provisions of [the Act], respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

2. To the extent the following cases could be read to provide the circuit court is without subject matter jurisdiction to hear Sabb's claims, they are overruled: *Woodard v. Westvaco Corp.,* 319 S.C. 240, 460 S.E.2d 392 (1995); *Dockins v. Ingles Markets, Inc.,* 306 S.C. 287, 411 S.E.2d

■ However, we acknowledge, while the trial court has subject matter jurisdiction over tort claims, certain cases may be taken from the trial court's original jurisdiction by the General Assembly. We find the General Assembly has vested the Commission with exclusive original jurisdiction over the types of claims made by Sabb, such that the circuit court was divested of its original jurisdiction over Sabb's claims.[3]

■ Therefore, the Commission had exclusive original jurisdiction to hear Sabb's claims. However, because University failed to raise the exclusivity provision as a defense to Sabb's tort action on appeal, that challenge is waived. We reiterate the exclusivity provision does not involve subject matter jurisdiction. We now address University's issues on appeal.

## UNIVERSITY'S APPEAL

### FACTS

Sabb, after working for University for five years, joined University's campus police department in 1984. In 1989, she became a certified training officer and Paul White became chief of the department.

Within three weeks of White becoming chief, Sabb's training duties were terminated and given to another officer who was not a certified training officer. Sabb filed several grievances against Chief White. For instance, when Sabb requested light

---

437 (1991); *McSwain v. Shei*, 304 S.C. 25, 402 S.E.2d 890 (1991); *Bridges v. Wyandotte Worsted Co.*, 243 S.C. 1, 132 S.E.2d 18 (1963).

**3.** The phrase "shall exclude all other rights and remedies" in the exclusivity provision demonstrates plain and unambiguous legislative intent to vest the Workers' Compensation Commission with exclusive original jurisdiction over an employee's claims, such as Sabb's claims.

Further support for this conclusion comes from S.C.Code Ann. § 15–78–60(14) (Supp.2000) of the Tort Claims Act, which provides that the governmental entity is not liable for a loss resulting from any claim covered by the Act.

From these statutes, it is apparent the General Assembly intends for employees to seek a remedy from employers for their work-related injury only through the Workers' Compensation Commission and not through the trial courts. Therefore, the trial court's original jurisdiction over this type of tort claim was divested by the General Assembly's enactment of these statutes, which, in turn, means the trial court lacked original jurisdiction to hear Sabb's claims.

duty due to an arthritic hip, Chief White informed her she would be required to take annual or sick leave. Sabb filed a grievance with University, but later withdrew the grievance when the Vice President Provost had the policy rescinded in writing. Chief White then placed Sabb on light duty working the midnight shift as a dispatcher.

In 1991, Sabb signed a petition circulated by officers within the department concerning problems with Chief White. Due to the petition, University appointed a committee to investigate. The Committee found: (1) over half of the police personnel signed a statement requesting the chief's removal; (2) as to the chief's revelation that he had no idea a problem existed, the Committee found the small size of the department made it difficult for anyone to work in such a hostile environment without being aware of the tensions that existed; (3) the chief had an apparent inability to assess problems when they arose and take corrective action to prevent escalation of the problems; and (4) the supervising staff had engaged in gross unprofessional behavior by expressing happiness at the chief's predicament.

The Committee recommended that Chief White participate in a mandatory management and leadership improvement plan for 120 days; and that his failure to participate in the plan would constitute grounds for removal from the department. It was also recommended that the supervisory staff undergo extensive training pertaining to personnel procedures, interpersonal skills development, and shared departmental decision making. The Committee recommended both Chief White and his supervisory staff, of which Sabb was a member, attend workshops to learn about institutional policies and procedures pertaining to discipline.

Sabb testified Chief White did not accomplish the above requirements, that University did not ensure compliance with the report, and that conditions did not improve within the department. Further, as a result of the petition, Sabb testified Chief White became openly hostile towards her.

In 1994, University held a meeting in which it was announced University would be investigating the department. Following the meeting, Sabb testified Chief White had his own meeting where he singled Sabb out and told her, as chief, he

reserved the right to make any decisions he wanted. A week later, Chief White was removed from the police department for a reason unrelated to the investigation, and Lieutenant Wilson became the chief.

Once Chief Wilson assumed his position, he made Sabb the Acting Lieutenant of Operations which placed her in charge of the entire operations of the department. However, when Chief White returned as chief less than a year later, he removed Sabb as Acting Lieutenant of Operations.

Subsequently, Sabb attempted to discipline Sergeant Pamela Gissentanna. Chief White refused to sign the discipline form; however, Chief Wilson (who remained chief along with Chief White for a period of time following Chief White's return) signed the form recommending suspension. Sabb testified that Gissentanna was never suspended. As a result, Sabb filed grievances with University regarding this matter and on the ground Chief White had removed her as Acting Lieutenant of Operations. The complaints were found to be non-grievable.

In another matter, while Sabb was on sick leave, Chief White eliminated her training duties and gave her the midnight shift as a patrol officer during a meeting she could not attend. Sabb stated that by becoming a patrol officer she was resuming the duties with which she commenced her police work over fifteen years earlier. University did not respond to her grievance regarding this matter.

Sabb filed another grievance on the basis she was denied a promotional opportunity when Chief White placed a co-employee in the position of Lieutenant of Operations without advertising the position per University requirements. University responded, in a letter to Sabb, that the position had not yet been established and the co-employee was temporarily assigned the Operations responsibilities. University informed Sabb that when the Lieutenant of Operations position was established, University job posting guidelines would be followed. As a result, University denied her grievance request because she had not been denied a promotional opportunity. In the presentation of her case, Sabb introduced a newspaper article that was published two days after the University's denial of her grievance request. This article announced that

the co-employee "was named lieutenant of operations." Sabb testified, to her knowledge, the position was never posted as an opening and there were no interviews for the position.

Sabb testified, as a result of Chief White's actions, she had an escalated blood pressure, interference with her sleep, and panic attacks. She called University's President and related her health problems. She also told University she feared for her life because Chief White had attempted to fight her.

After consulting with her physician, Dr. Ester Hare, Sabb requested a transfer to another department. At the time she requested the transfer, she was on bed rest and heavy medication.

Following her transfer, Sabb informed University she wished to keep her police credentials because she intended to return to the police department. However, her police certification was returned when her change in status form was sent to the Criminal Justice Academy because the form stated she had resigned from the department for personal reasons. Sabb testified the return of her credentials devastated her. Upon attempting to have the credentials returned, Sabb was told she would have to repeat Academy training.

Dr. Hare testified when Sabb first came to see her, Sabb was nervous, tearful, and had an escalated blood pressure. She testified she prescribed medicines for Sabb's anxiety and depression. As a result of conversations with Sabb, Dr. Hare wrote a letter to University, stating she was treating Sabb for hypertension and work-related anxiety because Sabb was afraid of her boss. In the letter, she recommended Sabb be placed in another position. Since Sabb left the police department, Dr. Hare testified Sabb has not been placed on medication.

Several of Sabb's co-workers testified on Sabb's behalf. Ella Reed testified Chief White told her as long as he was there, Sabb would never get a raise or promotion because she was not fit to be a police officer. Ronald Hook, another co-worker, testified he reported problems with the chief's personnel practices to University. Hook testified he had filed a grievance with University, partially due to Chief White's treat-

ment of him, such as cornering him and making harsh remarks to him.[4]

Following the conclusion of Sabb's case, University moved for a directed verdict on the negligence claims on the basis there was no showing of any facts that created a duty on the part of the University and there was no showing a duty had been breached by University. University also moved for a directed verdict on the ground University had discretionary immunity under S.C.Code Ann. § 15–78–60(5) (Supp.1998). The trial court denied the motion.

The jury returned a verdict in Sabb's favor. University moved for a judgment notwithstanding the verdict (JNOV), which was denied.

## ISSUE II

 University argues the trial court erred by denying its motion for a directed verdict and/or a JNOV for three reasons: (1) because the "discretion" exception contained in S.C.Code Ann. § 15–78–60(5) (Supp.2000) barred respondent's claims; (2) because respondent failed to prove University owed her a duty; and (3) because respondent failed to prove University breached a duty owed her.

 In ruling on directed verdict or JNOV motions, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions. *Steinke v. South Carolina Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 520 S.E.2d 142 (1999). The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt. *Id.* This Court will reverse the trial court only when there is no evidence to support the ruling below. *Id.* Further, a trial court's decision granting or denying a new trial will not be disturbed unless the decision is wholly unsupported by the evidence or the court's conclusions of law have been controlled by an error of law. *Id.*

---

4. Two other co-workers, Richard Johnson and Herman Singletary, testified they had filed grievances with University and had each filed a lawsuit against University.

*Directed verdict and JNOV motions on basis of discretionary immunity*

██ The Tort Claims Act waives immunity for torts committed by the State, its political subdivisions, and governmental employees acting within the scope of their official duties. *Pike v. South Carolina Dep't of Transp.*, 343 S.C. 224, 540 S.E.2d 87 (2000). There are several exceptions to this waiver of immunity, including what is known as discretionary immunity. *Id.*

S.C.Code Ann. § 15-78-60(5) (Supp.2000) provides that a governmental entity is not liable for a loss resulting from:

> the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee.

 Mere room for discretion on the part of the entity is not sufficient to invoke the discretionary immunity provision. *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997). Discretionary immunity is contingent on proof the government entity, faced with alternatives, actually weighed competing considerations and made a conscious choice using accepted professional standards. *Wooten ex rel. Wooten v. South Carolina Dep't of Transp.,* 333 S.C. 464, 511 S.E.2d 355 (1999). The governmental entity bears the burden of establishing discretionary immunity as an affirmative defense. *Summer v. Carpenter, supra.*

The burden was on University to show that it not only actually weighed competing considerations and alternatives regarding the supervision of Chief White but that, in doing so, it utilized accepted professional standards appropriate to resolve this issue. However, there is no evidence University did so. The testimony of University's President and University's Human Resources Director belie any notion that University weighed competing considerations and alternatives when deciding not to discipline or remove Chief White.

While it is true University made attempts to change the hostile environment in the department by requiring Chief White and others to undergo training sessions, there is no evidence University weighed competing considerations when making these decisions. Further, there is no testimony Uni-

versity utilized accepted professional standards appropriate to resolve the issue of Chief White's hostility towards and actions regarding his employees. Accordingly, the trial court properly denied the motions for directed verdict and JNOV. *See Summer v. Carpenter, supra* (mere room for discretion on part of governmental entity is not sufficient to invoke discretionary immunity provision; governmental entity bears burden of establishing discretionary immunity as affirmative defense). *See also Pike v. South Carolina Dep't of Transp., supra* (to allow governmental entity to shield itself with only a showing of "some evidence" would eviscerate standard entity must meet to establish discretionary immunity enunciated by the Court; certainly a governmental entity should not be entitled to discretionary immunity as a matter of law merely by creating an issue of fact).

*Directed verdict and JNOV motions based on lack of duty or breach of alleged duty*

In a negligence action, a plaintiff must show the (1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages. *Steinke, supra.* If there is no duty, then the defendant in a negligence action is entitled to a directed verdict. *Id.*

A duty arose on University's part once University was placed on notice of Chief White's behavior and actions. After University received the grievances of Sabb and other employees, University had a duty to address the employees's concerns with due care.

A jury issue also existed as to whether University had breached that duty. University was on notice of Chief White's activities through conversations Sabb and other employees had with University officials, the petition circulated by members of the police department, the grievances of Sabb and other employees, and through the Committee's report detailing the findings of their investigation into Chief White's actions. Despite these numerous complaints and notifications of Chief White's actions and behavior, University allowed him to continue serving as chief of the department without any real effort to rectify the hostile conditions within the department.

Viewing the evidence in the light most favorable to Sabb, the trial court properly denied the directed verdict and JNOV motions because evidence existed to show University had possibly breached a duty owed to Sabb. *See Steinke, supra* (trial court's decision denying directed verdict and JNOV motions will not be disturbed unless there is no evidence to support ruling or unless trial court's conclusions of law have been controlled by error of law).

## ISSUE III

 University argues the trial court should have excluded all of the evidence regarding Sergeant Pamela Gissentanna, under Rule 403, SCRE, because the probative value of the evidence was substantially outweighed by its prejudicial effect.

This issue is not preserved for our review because University did not make an objection to the evidence during trial [5] and because University did not object to *all* the evidence regarding Gissentanna but now wishes to do so on appeal. *See State v. Griffin,* 339 S.C. 74, 528 S.E.2d 668 (2000) (motion *in limine* is not final and losing party must renew its objection at trial when evidence is presented to preserve issue for review); *Holy Loch Distribs., Inc. v. Hitchcock,* 340 S.C. 20, 531 S.E.2d 282 (2000) (to preserve issue for appellate review, issue must have been raised to and ruled upon by trial court); *Taylor v. Medenica,* 324 S.C. 200, 479 S.E.2d 35 (1996) (party may not argue one ground for an objection at trial and another ground on appeal).[6]

**AFFIRMED.**

---

**5.** Prior to trial, University made a motion *in limine* requesting the trial court exclude from Sabb's presentation at trial any testimony concerning "sexual harassment by way of a third party," which was alleged in Sabb's grievances to University. University stated in its motion that Sabb actually meant that Chief White favored Gissentanna, and that the use of the words "sexual harassment" was unduly prejudicial to University.

At trial, University's objection to an exhibit which contained a reference to sexual harassment was overruled. When Sabb's counsel asked Sabb's co-employee, Hook, if he had observed any favoritism by Chief White towards Gissentanna, University did not object.

**6.** In any event, the evidence attempting to demonstrate an improper relationship between Chief White and Officer Gissentanna was properly

TOAL, C.J., WALLER and BURNETT, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

PLEICONES, Justice:

I agree with the majority that the Workers Compensation Act ("the Act") does not divest the circuit court of subject matter jurisdiction in this matter. I would, however, grant the University's motion for a directed verdict on Sabb's negligent supervision and retention claims,[7] and therefore, I respectfully dissent.

I question whether an employee should ever be allowed to sue her employer on a theory of negligent retention or supervision for the acts of a supervisory employee.[8] *See Patriarca v. Center For Living and Working, Inc.,* 1999 WL 791888 (Mass.Super.1999). Assuming such an action could be brought, I would follow the approach taken by a number of courts and require that the actions of the negligently supervised or negligently retained supervisor be significantly more egregious than White's in order to be actionable in tort. *See e.g. Hays v. Patton–Tully Transp. Co.,* 844 F.Supp. 1221 (W.D.Tenn.1993) (negligent supervision claim will lie only where supported by viable claim of tortious conduct by offending employee); *Mulhern v. City of Scottsdale,* 165 Ariz. 395, 799 P.2d 15 (Ct.App.1990) (in order for employer to be liable for negligent hiring, retention, or supervision, the employee

admitted because it was relevant for the purpose of showing Chief White may have engaged in favoritism when making decisions regarding his subordinates. *See Pike v. South Carolina Dep't of Transp., supra* (admission and rejection of testimony is largely within the trial court's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion).

**7.** Although Sabb's complaint also asserted causes of action for intentional infliction of emotional distress, violation of Whistle Blower Act, assault, civil conspiracy, and negligent hiring, the only theories submitted to the jury were her claims of negligent retention and negligent supervision.

**8.** Of course, but for the University's failure to interpose the exclusivity provisions of the Act, this case would not have been before the Circuit Court in the first instance. In my view, this failure to assert the exclusivity provisions of the Act may have been strategic, owing to an assessment that the case would probably be dismissed.

must have committed an actionable tort); *Schoff v. Combined Ins. Co. of America,* 604 N.W.2d 43 (Iowa 1999) (the torts of negligent hiring, supervision, or training must include as an element an underlying tort or wrongful act committed by the employee); *Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 340 S.E.2d 116 (1986) (before employer can be held liable for negligently hiring or retaining an employee, plaintiff must prove that the offending employee committed a tortious act resulting in injury to plaintiff); *Gonzales v. Willis,* 995 S.W.2d 729 (Tex.Ct.App.1999) (plaintiff-employee's negligent hiring, retention, and supervision claims against employer failed where plaintiff-employee failed to show actions of offending employee amounted to an actionable tort); *Haverly v. Kaytec, Inc.,* 169 Vt. 350, 738 A.2d 86 (1999) (the tort of negligent supervision must include as an element an underlying tort or wrongful act committed by the employee).

The evidence presented by Sabb at trial established the following: (1) White reassigned Sabb's job duties, that is, he relieved Sabb of her training and supervisory duties, and scheduled her to work the night shift; (2) when Sabb reported that she was physically unable to perform her normal job assignments, White "threatened" to make Sabb submit leave (after Sabb complained to the University, White did not carry through with the "threat," but instead reassigned Sabb to light duty); (3) White singled-out Sabb at a staff meeting and verbally reiterated his authority as head of the police department; and (4) White refused to approve Sabb's request to discipline an employee supervised by Sabb. None of this conduct rises to the level of a tort.[9]

To allow recovery based on the theory advanced in this case has grave consequences for the employer-employee relationship. The workplace is often stress-laden. Employees fre-

---

9. The only possible theory I can perceive from Sabb's complaints is a claim for outrage or intentional infliction of emotional distress. There is insufficient evidence as a matter of law to support recovery for outrage. *See Shipman v. Glenn,* 314 S.C. 327, 443 S.E.2d 921 (Ct.App. 1994) ("callous and offensive conduct" of supervisor insufficient to support employee's recovery for intentional infliction of emotional distress; conduct must be so extreme and outrageous as to exceed bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; plaintiff not proceeding on theory of negligent retention or supervision).

quently disagree with the personnel decisions of their supervisors. Often employees complain to management about job assignments and the treatment they receive from supervisors. Allowing an employee to recover from the employer based on the facts of this case leaves employers with two options in the future: (1) fire the supervisor when a subordinate employee complains, or (2) retain the supervisor, and become liable for money damages if the complaining employee prevails on a negligent retention and supervision claim.[10] While White's conduct bespeaks an undesirable management style, the University should not be liable to this unhappy plaintiff as a result.

In my opinion, the University was entitled to a directed verdict on Sabb's claims of negligent supervision and negligent retention. Sabb has wholly failed to show that White's actions towards her constituted a tort.

---

10. There exists, of course, a third option: take action against the complained-of employee short of job termination. The University pursued that option here, but that course of action did not relieve it of liability to Sabb.